In the

# United States Court of Appeals

## For the Seventh Circuit

No. 00-2769

JOHN WALKER,

*Plaintiff-Appellant*,

*v.*

DR. IVY BENJAMIN, DR. ADRIAN
FEINERMAN, DR. ANSAR ANSARI,
DR. VIRGILIO PILAPIL, PAMELA
DUNBAR and VICKIE ROWLAND,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 97 C 3036—**Byron G. Cudmore,** *Magistrate Judge.*

ARGUED MARCH 26, 2001—DECIDED JUNE 18, 2002

Before FLAUM, *Chief Judge*, BAUER and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* John Walker, a state prisoner, sued a number of prison doctors and nurses for violating his constitutional rights by acting with deliberate indifference to his serious medical needs. The district court found that all of the defendants were entitled to qualified immunity, and dismissed the case with prejudice. We affirm in part, reverse in part, and remand.

## I.

Although the district court did not label its ruling as such, we are reviewing a grant of summary judgment. Thus, our review is *de novo*, and we construe the facts in a light most favorable to the party opposing summary judgment. *Hostetler v. Quality Dining Inc.*, 218 F.3d 798, 802 (7th Cir. 2000). John Walker was an inmate at Western Illinois Correctional Center at the time of these events. On July 15, 1995, while Walker was in his bunk in his cell, a heavy steel drawer fell from the bunk above him and struck his right hand. A screw in the drawer punctured his finger. He suffered a deep cut on his small finger and an injury to the joint at the base of the finger. He asked a correctional officer for medical care but was not allowed to go to the health care unit at that time. He was seen at the health care unit two days later by Vickie Rowlands, a nurse. He asked to see a doctor at that time but Nurse Rowlands declined his request, opting instead to examine and treat the wound herself. He complained to the nurse that he was in great pain and that the wound was "down to the bone." After examining Walker, Nurse Rowlands applied topical antibiotics and directed him to soak his hand in salt water.

On July 19, Walker returned to the health care unit, complaining of pain and infection in his right hand and finger. At this point, the wound was draining pus, and Walker was walking with his hand bent upward at the elbow to help limit the throbbing pain he felt when his hand was lower. He told the nurse who examined him that he thought his finger was broken. She noted in his medical records that an infection was suspected, and she called Dr. Adrian Feinerman to report her suspicion. Over the phone, Dr. Feinerman ordered an x-ray of Walker's hand but did not personally examine him. Walker asserts that Dr. Feinerman did not order antibiotics, but his record citations do not support that assertion. At most, Walker's rec-

ord cites demonstrate that he did not *receive* antibiotics, but he offers no evidence regarding whether Dr. Feinerman ordered them. The defendants present unrebutted prison records showing that Dr. Feinerman ordered penicillin for the infection and ibuprofen for pain. Dr. Feinerman did not refer Walker to a specialist at that time and did not review the x-ray. Dr. Sherrick, who is not a defendant here, reviewed the x-ray that same day and found it negative for fracture and negative for osteomyelitis (an infection involving the bone).

On July 23, Dr. Benjamin reviewed Dr. Sherrick's report and examined Walker. At that time, his entire arm was swollen, he could not move his hand and he was in great pain. Again, unrebutted medical records show that she ordered a topical antibiotic, an ACE bandage, and Motrin for pain. She did not order IV antibiotics at that time. According to Walker, Dr. Benjamin told him that his fingers were fine.

Although Walker visited the medical unit for treatment of a sinus condition on July 26, the medical progress notes do not indicate any complaints about his hand that day. Two days later, however, he returned to the medical unit complaining about pain and swelling in his hand. His wound was draining pus. An unidentified nurse scheduled Walker to see a doctor the next day. On July 29, Walker saw Dr. Benjamin again and Nurse Rowland. Dr. Benjamin noted an infection and prescribed Keflex, a different antibiotic. She continued a topical antibiotic as well and scheduled Walker for a follow-up visit in a week. She did not refer Walker to a specialist and did not order a second x-ray at that time.

Walker continued to experience pain and the drainage of pus from his wound, but did not return to the health care unit for more than a week. The record does not reveal who was responsible for his failure to receive care during that

week; he implies the defendants were responsible but provides no record support for this proposition. Nor does he provide record evidence regarding who was responsible for his failure to receive the oral antibiotics that were prescribed for him during this time. The defendants cite unrebutted evidence that on August 8, three days after his scheduled follow-up appointment, Walker appeared at the health care unit complaining only of nasal stuffiness. On August 10, he returned to the heath care unit for treatment of the wound to his hand. He was seen by Nurse Dunbar. Although he was in great pain, Nurse Dunbar did not give him any pain medication. He was seen that same day by Dr. Virgilio Pilapil, the doctor on call, who referred Walker to Dr. Ansar Ansari, a surgeon. Dr. Ansari told Walker he had an infection that was eating away the bone and that he would have to see a specialist. He ordered a complete blood chemistry, a culture, and an x-ray to rule out osteomyelitis. He did not prescribe pain medication. He noted that Walker would require a semi-emergent procedure to correct the problem. The x-ray and complete blood chemistry were completed within a day.

On August 11, Dr. Feinerman was informed that the x-ray showed displacement of the joint. Dr. Feinerman prescribed the oral antibiotic Cipro but directed that it not be given to Walker until the culture was completed. Walker was scheduled to see Dr. Benjamin on August 12. She examined Walker that day and reviewed the x-ray results. She diagnosed infection going into the bone and displacement of the bone at the base of the finger. Although Walker complained of great pain, she did not prescribe pain medication. She ordered that Walker be given Cipro and dressings for his wound. She did not refer Walker to a specialist and did not order intravenous antibiotics.

A radiologist reviewed the second x-ray and dictated a report on August 15. The radiologist diagnosed osteomyelitis. Dr. Ansari was informed of this report on August 16,

and requested a consultation for Walker with an orthopae-
dic specialist. On August 24, Walker was seen by Dr, Her-
rin, an orthopaedist. Dr. Herrin scheduled Walker for emer-
gency surgery and performed the procedure that same
afternoon at a hospital outside the prison. Walker remained
in the hospital until August 29. During that time, he was
given intravenous antibiotics, and was treated by Dr. Don-
ald Graham, a physician board certified in internal medi-
cine and infectious diseases.

Dr. Graham prescribed Darvocet-N 100, a narcotic pain
reliever, as needed. After his return to prison, Walker re-
peatedly asked for pain medication, and both Nurse Dun-
bar and Dr. Benjamin refused to give him anything for pain.
According to Walker, while he was in the prison infirma-
ry after his surgery, he repeatedly pushed the call button
to ask the nurse for pain medication. Nurse Dunbar ei-
ther failed to respond to the call button or angrily told
Walker to "stop pushing the damned call button, you don't
need anything." She also told Walker, "You will get pain
medication when I want you to have it, and I don't want you
to have it." Walker also told Dr. Benjamin he was in pain
and not receiving his pain medication, and Dr. Benja-
min replied that Walker just wanted to get high, did not
need the pain medication, and could not have it. When
he returned to Dr. Graham for a follow-up visit, Walker
told Dr. Graham that he was not getting the prescribed
Darvocet. Dr. Graham said he would try to help. When
Walker next saw Nurse Dunbar, she said, "So you blabbed
to the doctor that we weren't giving you your pain med-
ication. You only want to get high, and we aren't going to
let you do that."

Walker sued Drs. Benjamin, Feinerman, Ansari and
Pilapil, and Nurses Dunbar and Rowland under 42 U.S.C.
§ 1983 for violating his constitutional right to be free from
cruel and unusual punishment. He alleged they were
deliberately indifferent to his serious medical needs by not

providing adequate medical care or pain relief.[1] The defendants moved for summary judgment, and the district court granted judgment in favor of Nurse Rowland and Dr. Pilapil, finding that Walker had insufficient evidence of deliberate indifference by these two defendants. The court denied summary judgment as to the remaining defendants. As the parties prepared for trial, Walker filed a motion for a directed finding on the issue of qualified immunity. Walker sought to exclude the issue of qualified immunity from trial on the grounds that the defendants were not entitled to immunity in this case because a prisoner's right to be free from cruel and unusual punishment by the denial of necessary medical care and pain relief was well-established at that time. The defendants argued that Walker's motion was untimely and that he was not entitled to a directed finding in his favor on the issue of qualified immunity. The defendants asked the court to find instead that they were entitled to qualified immunity as a matter of law and requested that the case be dismissed with prejudice.

The district court found that Nurse Dunbar was entitled to qualified immunity because Walker had not produced evidence that she had indeed refused to refer him to a doctor or had refused to give him antibiotics. The court declined to consider Walker's claim that Nurse Dunbar had refused to give him pain medication after his surgery because Walker had not pleaded those facts in his complaint. The court found that Dr. Ansari was also entitled to qualified immunity because there was no evidence that he knew of and disregarded a risk to Walker's health. Instead, Dr. Ansari had correctly diagnosed Walker's condition and had referred him to a specialist for semi-emergent care. An affidavit from a hospital administrator showed

---

[1]  He also brought a state law claim under 730 ILCS 5/3-2-7, for failure to provide necessary medical care promptly. Walker later abandoned that claim.

that Dr. Ansari could not expedite Walker's physical removal from prison to the hospital, and thus any delay was due not to deliberate indifference but to factors outside Dr. Ansari's control.

Dr. Feinerman was entitled to qualified immunity, according to the district court, because Walker produced no evidence of Dr. Feinerman's deliberate indifference. Instead, the evidence showed that Dr. Feinerman ordered oral antibiotics on two occasions, and ordered an x-ray of Walker's hand. The court found that Dr. Feinerman's failure to prescribe intravenous antibiotics after the diagnosis of osteomyelitis had been made may have been negligent but was not adequate to demonstrate deliberate indifference in light of the other care this physician provided. As with Dr. Feinerman, the court found that Dr. Benjamin was at most negligent with her failure to prescribe intravenous antibiotics after Walker was diagnosed with osteomyelitis. Examining the totality of the medical care provided by Dr. Benjamin, the court found that there was no evidence of deliberate indifference because on the three occasions she treated Walker, Dr. Benjamin prescribed antibiotics, dressings or other medications as she deemed medically appropriate for his injury. The court refused to consider Walker's claim that Dr. Benjamin refused to give him his prescribed pain medication after surgery because Walker did not put Dr. Benjamin on notice of this claim in his complaint. The court therefore found Dr. Benjamin was entitled to a finding of qualified immunity. Because all of the remaining defendants were entitled to qualified immunity as a matter of law, the district court dismissed the case with prejudice. Walker appeals the district court's grant of summary judgment in favor of Drs. Benjamin, Ansari and Feinerman, as well as Nurse Dunbar. He does not appeal the district court's earlier grant of summary judgment in favor of Dr. Pilapil and Nurse Rowland.

## II.

We review the district court's grant of summary judgment on the grounds of qualified immunity *de novo. Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996); *Walker v. Shansky*, 28 F.3d 666, 670 (7th Cir. 1994). Walker complains that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment. In particular, he alleges that they were deliberately indifferent to his serious medical needs, and this indifference caused him great pain and permanent injury. The Supreme Court held in *Estelle v. Gamble* that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment and that such indifference may give rise to a claim under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference claim contains both objective and subjective elements. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). The deprivation suffered by the prisoner must be objectively sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities. *Gutierrez*, 111 F.3d at 1369 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious." *Gutierrez*, 111 F.3d at 1369. The subjective element requires that the prison official acted with a sufficiently culpable state of mind. *Id*. A negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim because such a failure is not an "unnecessary and wanton infliction of pain," and is not "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. However, the standard for deliberate indifference

is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). "[A] prisoner claiming deliberate indifference need not prove that the prison officials intended, hoped for, or desired the harm that transpired." *Haley*, 86 F.3d at 641. It is enough to show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk. *Id*. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Walker moved to preclude the defendants from raising a defense of qualified immunity at trial. Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001); *Walker*, 28 F.3d at 670. To overcome the defense of qualified immunity, a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation. *Alvarado*, 267 F.3d at 652. The district court blended together its analysis of whether there was a genuine issue of material fact with respect to Walker's claim and whether the defendants were entitled to qualified immunity. Under certain circumstances, such as those presented here, the two inquiries effectively collapse into one. *Delgado-Brunet*, 93 F.3d at 345. As we just discussed, a plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to the plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendant's subjective intent to harm or deliberate indifference. *Id*. If there are genuine issues of fact concerning those elements, a defendant may

not avoid trial on the grounds of qualified immunity. *Id*. Likewise, if the uncontested facts reveal a fatal gap in the plaintiff's case, the defendant will win on the merits. *Id*. With these standards in mind, we will examine Walker's two-fold claim that the defendants caused him permanent injury when they failed to appropriately treat his infection, and that they failed to treat him for his pain.

We begin with his assertion that the defendants were deliberately indifferent to his serious medical needs when they failed to appropriately treat his infection, leading to osteomyelitis and permanent injury. Because Walker cites no evidence relating to Nurse Dunbar on this claim, we look to the action or inaction of the physician defendants. Dr. Ansari saw Walker for the first time on August 10, following a referral from Dr. Pilapil. Walker does not dispute that Dr. Ansari correctly identified Walker's condition as an infection that had entered the bone. Dr. Ansari ordered further tests to determine the exact nature of the infection. When the test results came back on August 16, Dr. Ansari requested a consultation for Walker with an orthopaedic specialist. Prison officials arranged for Walker to see the specialist on August 24. Walker's sole complaint about Dr. Ansari seems to be the delay between the initial visit, the diagnosis, and the visit to the specialist. Walker has presented no evidence that these delays were even within Dr. Ansari's control, much less that he was deliberately indifferent to Walker's medical needs. Nor has Walker presented any evidence that the delay contributed to his injuries. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (prisoner who complains that delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment in order to succeed). The district court correctly granted judgment in favor of Dr. Ansari.

Dr. Feinerman was first contacted about Walker by a prison nurse on July 19. At that time, Dr. Feinerman

ordered an x-ray of Walker's hand, oral antibiotics, and an over-the-counter painkiller. The x-ray, which was reviewed by another physician, was negative for osteomyelitis, and Walker has not produced any evidence showing that Dr. Feinerman's treatment at that time was inadequate or inappropriate. Although Walker claims not to have received the antibiotics that were prescribed for him, he has produced no evidence showing that failure was in any way within Dr. Feinerman's control. On August 11, Dr. Feinerman was informed that a second x-ray showed displacement of the joint. Dr. Feinerman ordered a culture to determine the exact nature of the infection, and ordered another antibiotic to be given once the type of infection was verified. Again, Walker has presented no evidence that Dr. Feinerman was deliberately indifferent to Walker's medical needs, or that Dr. Feinerman's actions led to further injury. We agree with the district court that Dr. Feinerman's failure to prescribe intravenous antibiotics once osteomyelitis was diagnosed was at most negligent. *See Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir. 1995), *cert. denied*, 516 U.S. 993 (1995) (treatment below the standard of care for a given condition is not enough alone to make out a claim of deliberate indifference); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied*, 519 U.S. 897 (1996) (merely negligent care does not rise to the level of an Eighth Amendment violation). Judgment in favor of Dr. Feinerman was appropriate under these circumstances.

Dr. Benjamin examined Walker on July 23. She reviewed the first x-ray, which was negative for osteomyelitis, and ordered a topical antibiotic, a pain reliever and an ACE bandage. When Walker returned to the medical unit on July 29 with a worsening of his infection, Dr. Benjamin ordered a different oral antibiotic and a continuation of the topical antibiotic. She scheduled a follow-up visit the next week. Walker did not return to the health care unit for this follow-up visit and the record does not reveal who was responsible for this failure. He next saw Dr. Benjamin on

August 12, after a second x-ray showed displacement of the bone at the base of his finger. She ordered still another oral antibiotic at that time. As with the other physicians, Walker's evidence shows at most that Dr. Benjamin was negligent in failing to diagnose osteomyelitis when the second x-ray showed displacement of the bone. Negligence is not enough to make out a claim for deliberate indifference. *See Williams*, 55 F.3d at 324; *Steele*, 82 F.3d at 178. Although the district court was therefore correct to grant judgment in favor of Dr. Benjamin on this part of the claim, we will consider further evidence regarding Dr. Benjamin's refusal to treat Walker's post-surgical pain separately.

The district court declined to consider Walker's claim that the defendants were deliberately indifferent to his pain. The district court noted that Walker failed to plead allegations related to post-surgical treatment of his pain, and the defendants were therefore not on notice that he was challenging this conduct. We disagree with the district court's analysis. Federal Rule 8(a)(2) requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). Walker thus need not set out in detail all of the facts upon which he bases his claim. Rule 8(a) requires only that the complaint give the defendants fair notice of what the claim is and the grounds upon which it rests. *Leatherman*, 507 U.S. at 168. We have reviewed Walker's complaint and find that he did adequately allege his claim regarding the treatment of his pain. Walker mentions the defendants' failure to treat his pain no fewer than ten times in his complaint, culminating in a claim that the defendants denied him "prompt and effective treatment for his pain." Complaint at ¶ 39. That is more than sufficient notice of the nature of his claim against the defendants. Walker need not allege in his complaint the dates of the wrongful conduct or any of the details. Such minutiae are properly left for dis-

covery. The district court should have considered Walker's claims as they related to inadequate pain relief, and we will consider them now.

Walker's only evidence regarding Nurse Dunbar related to her persistent refusals to give him pain medication. On August 10, Walker complained to Nurse Dunbar that he was in great pain but she did not give him pain medication. Following his surgery, when Walker returned to the prison infirmary with a prescription for Darvocet-N 100, a narcotic pain reliever to be used as needed, Nurse Dunbar refused to give Walker any medication for pain. Instead, she is alleged to have told him to stop pushing the call button, and told him, "You will get pain medication when I want you to have it, and I don't want you to have it." After Nurse Dunbar learned that Walker had complained to his doctor about not receiving his prescribed medication, Nurse Dunbar said, "So you blabbed to the doctor that we weren't giving you your pain medication. You only want to get high, and we aren't going to let you do that." We are obliged at this point to credit Walker's version of these events, and if they are true, Walker presents a disturbing picture. Walker had an injury likely to cause considerable pain; he had an infection so severe that it caused a bone to be displaced. After surgery, his treating physician prescribed a powerful narcotic-based painkiller, indicating that he expected Walker would be in great pain. According to his version of events, Walker both complained about his pain and manifested physical indications that he was in pain. Moreover, his doctor prescribed pain medication, and Nurse Dunbar simply refused to give it to him.

The Supreme Court clarified in *Estelle* that the "unnecessary and wanton infliction of pain" is proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. The Court reasoned that deliberate indifference to the serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is proscribed by the Eighth Amendment:

> This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 104-05 (footnotes omitted). We have echoed this analysis. *See Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999) (deprivation of medical treatment necessary to preclude severe pain and lost use of right arm sufficiently serious to trigger Eighth Amendment protections); *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir. 1995) (prisoner suffering severe pain after head injury who was told by guard to "stop being a baby" and learn to live with the pain was entitled to go forward with a deliberate indifference claim against that guard); *Gutierrez*, 111 F.3d at 1373 (a refusal to treat a medical condition marked by the existence of chronic and substantial pain may give rise to an Eighth Amendment claim). Nurse Dunbar's refusal to give Walker his prescribed pain medication comes well within the standards set forth in these cases. Walker's injury was not trivial; his infection was so severe as to displace a bone and require emergency surgery. His treating physician prescribed pain medication, and according to Walker's version of events, the nurse refused to dispense it. The same analysis applies to Dr. Benjamin, who also refused to give the prescribed pain medication. The fact that Nurse Dunbar and Dr. Benjamin may have based their refusal to treat Walker's pain on a good-faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic painkiller, is an issue for the jury. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) (because pain is a uniquely subjective experience, a plaintiff need not produce objective evidence of injury in order to withstand summary judgment). Walker "was not seeking an expensive or unconventional treatment; he just wanted the pain medication that the prison doctor had prescribed for him. [The defendants'] deliberate

refusal of it was a gratuitous cruelty. . . ." *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). His claim for the deliberately inadequate treatment of his severe pain thus survives summary judgment.

Nor are the defendants entitled to a finding of qualified immunity on this claim. The general standard for liability under the Eighth Amendment for refusal to treat a serious medical condition was well-established at the time of these events. *Ralston*, 167 F.3d at 1162. Indeed, the application of that standard to pain medication was also well-established, and reasonably clear and definite at the time of these events. *Id.* The purpose of the doctrine of qualified immunity is to shield public officers from liability "consequent upon either a change in law after they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it." *Id.* There is no question here that at the time Nurse Dunbar and Dr. Benjamin refused to give Walker his prescribed pain medication (again, according to his version of events), such an action would give rise to liability under section 1983. We therefore reverse and remand the district court's judgment in favor of Nurse Dunbar and Dr. Benjamin on Walker's claim as it relates to untreated pain, and remand for proceedings consistent with this opinion.

AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*