**Garritt L.J. FORSTNER, Plaintiff–Appellant,**

v.

**George M. DALEY, et al., Defendants–Appellees.**

No. 02–1954.

United States Court of Appeals, Seventh Circuit.

Submitted April 1, 2003.*

Decided April 2, 2003.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before FAIRCHILD, BAUER, and KANNE, Circuit Judges.

### ORDER

Former Wisconsin inmate Garritt Forstner brought this suit, *see* 42 U.S.C. § 1983, claiming that five prison officials violated his Eighth Amendment rights by failing to treat his injured knee for 20 months. The district court dismissed the complaint against one defendant for lack of personal jurisdiction and entered summary judgment in favor of the others on the ground that Forstner could not establish that his injury was sufficiently serious or that any defendant was deliberately indifferent. We affirm.

In September 1999 Forstner fell in the shower and injured his knee. At the time he was a Wisconsin inmate housed in Texas. Five days after the injury, Dr. String-fellow, a physician at the Texas prison, sent Forstner to St. Michael's Hospital for x-rays. A St. Michael's doctor reported that Forstner had joint effusion, but an otherwise normal knee with no fractures. A few weeks later Dr. Stringfellow requested permission from Dr. Daley, the Medical Director for the Wisconsin Department of Corrections, to send Forstner to an orthopedic specialist. Dr. Daley approved the visit, and the specialist recommended that Forstner receive an "MRI on an expedient basis." However, Forstner did not receive the MRI before his January 2000 transfer to Fox Lake Correctional Institution (FLCI) in Wisconsin.

At FLCI nurses gave Forstner a "knee sleeve" to wear. In May he met with Dr. Luy, an FLCI physician. Dr. Luy ordered an orthopedic consultation and an MRI, which occurred respectively in July and August. The orthopedist determined that Forstner needed surgery, so Dr. Luy requested and received permission from Dr. Daley to schedule it. Dr. Luy then scheduled an appointment with an orthopedic surgeon for September 22.

On September 6 Forstner was transferred to the Supermax Correctional Institution (SMCI) (now named Wisconsin Secure Program Facility). Two days later he met with Dr. Riley, an SMCI physician. Dr. Riley sent Forstner to his September 22 appointment with the orthopedic surgeon. Forstner was placed on the University of Wisconsin's surgery waiting list in November, and his surgery was scheduled for July 2001. In May 2001 Forstner complained about his care to Gerald Berge, the warden at SMCI. The hospital cancelled Forstner's July appointment because of scheduling problems, and he did not receive the surgery until November 2001.

Forstner filed a complaint in the Western District of Wisconsin in May 2001 against Drs. Stringfellow, Luy, Daley, and Riley, and Warden Berge. Dr. String-

fellow filed a motion to dismiss for lack of personal jurisdiction, and the remaining defendants moved for summary judgment. Forstner reportedly was unable to respond to these motions due to his unexpected release from prison and return to Florida, so the court dismissed the case without prejudice, subject to reopening when Forstner became able to file his responses. The matter was reopened when Forstner filed his responses and his own motion for summary judgment. The court ultimately dismissed the complaint against Dr. Stringfellow for lack of personal jurisdiction, reasoning that he treated Forstner in Texas, not Wisconsin, and lacked sufficient contacts with Wisconsin. The court also granted summary judgment to the remaining defendants after concluding that Forstner lacked evidence of a serious medical need or of deliberate indifference.

At the outset we note that Forstner does not challenge the dismissal of the complaint against Dr. Stringfellow in his opening brief. He attempts to raise the issue in his reply brief, but arguments raised for the first time in a reply brief are waived. *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir.2002). So, here we will address only Forstner's challenge of the court's grant of summary judgment to the remaining four Wisconsin officials, and our review is *de novo*. *Boyce v. Moore*, 314 F.3d 884, 888 (7th Cir.2002). Forstner argues generally that the court erred because there were disputes about material facts that warranted a trial. To survive summary judgment, Forstner needed to present evidence that prison officials were deliberately indifferent to a serious medical need. *Id.* at 889. Deliberate indifference contains both subjective and objective elements. First, the prisoner must have an objectively serious medical need. *Boyce*, 314 F.3d at 889. Second, the prison official must have acted with a "sufficiently culpable state of mind,"

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir.2002); that is, he must have been aware of the medical need and disregarded an excessive risk to the prisoner's health or safety. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir.2001).

The district court concluded that Forstner failed to meet his burden on either prong. We need not decide whether Forstner satisfied the first prong because we agree with the court's analysis of the second. Although a delay of 26 months between the injury and surgery is troubling, Forstner failed to show that any of the four Wisconsin officials recklessly disregarded an excessive risk to his health or safety. *Wynn*, 251 F.3d at 593. Whatever the cause of the delay–be it the timing of his transfers or scheduling problems with outside physicians–Forstner did not present evidence that the Wisconsin officials acted with deliberate indifference.

First, Dr. Luy treated Forstner while he was housed at FLCI. Dr. Luy met with him in May, ordered the orthopedic consult that occurred in July, and then followed the orthopedist's advice to schedule Forstner for an MRI and then surgery. These facts reveal that Dr. Luy did not disregard Forstner's injury, but rather that he treated him for it without any significant delay.

Second, Dr. Riley began treating Forstner when he arrived at SMCI. Dr. Riley met with him two days after the transfer, sent him to an orthopedic specialist two weeks later, and filled out the paperwork to have Forstner placed on the University of Wisconsin Hospital's surgery waiting list in November. Without consulting Dr. Riley, the hospital scheduled Forstner for surgery in July and then had to reschedule the surgery for November. Dr. Riley was not responsible for the hospital's delay, and there is no indication that he could

have prevented it. These facts reveal that Dr. Riley was not deliberately indifferent to Forstner.

Third, Dr. Daley never personally treated Forstner. As the Medical Director for the Wisconsin Department of Corrections, he was involved in Forstner's care only to the extent that he approved requests for orthopedic consults, the MRI, and the surgery. Rather than showing that Dr. Daley neglected Forstner in any way, the evidence shows that Dr. Daley approved every treatment request that he received for him. There is no indication that he was responsible for any of the delays in care or that Forstner ever complained to him that he was dissatisfied with his medical treatment.

Finally, Berge, SMCI's warden, was never involved with Forstner's medical care. Forstner said in his verified complaint that he "put Defendant Berge on notice about this incident" in May 2001, but he provided no further information about any communication with Berge. And, it is not clear what Forstner expected Berge to do for him because in May 2001 Forstner was already under the care of a surgeon at the University of Wisconsin, and he was scheduled to have surgery two months later. In any case, there is no evidence that Berge disregarded an excessive risk to Forstner's safety.

Forstner presents two additional arguments that are without merit. Accordingly, the judgment of the district court is AFFIRMED.