James EDENS, Plaintiff–Appellant,

v.

Dennis LARSON et al., Defendants–Appellees.

No. 03–3794.

United States Court of Appeals,
Seventh Circuit.

Submitted Sept. 23, 2004.*

Decided Sept. 24, 2004.

Rehearing Denied Nov. 5, 2004.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

———

James Edens, Illinois River Correctional Center, Canton, IL, for Plaintiff–Appellant.

Lawrence R. Smith, Brinker & Doyen, Rodney M. Sharp, Sandberg, Phoenix & Von Gontard, St. Louis, MO, Kelly Choate, Office of the Attorney General, Christine M. McClimans, Patrick J. Londrigan, Heyl, Royster, Voelker & Allen, Springfield, IL, for Defendants–Appellees.

Before EASTERBROOK, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

For the past two decades, Illinois inmate James Edens has suffered from cluster headaches. In a complaint filed under 42 U.S.C. § 1983, he alleges that medical personnel at two prison facilities were deliberately indifferent to his condition, in violation of the Eighth Amendment. The district court granted summary judgment in favor of all the defendants.

Cluster headaches are a rare and intensely painful form of vascular headache that, although individually of relatively short duration, usually occur several times a day over the course of weeks or even months before going into remission. *See* AMA Complete Medical Encyclopedia, q.v. "headache" (2003). Edens has tried various medications over the years to treat this condition, with greater or lesser success. While at the Logan Correctional Center, before his transfer to the Pinckneyville Correctional Center in February 1999, he was taking a medicine called Elavil (a tricyclic antidepressant), which he reports had brought his headaches under control.

According to Edens' complaint, his Elavil prescription was discontinued when he arrived at Pinckneyville. Rather than renew the prescription, Dr. Dennis Larson (the first defendant in this case), who performed Edens' medical intake interview, suggested "meditation and relaxation" after Edens speculated that the attacks might be stress-related. Larson did not prescribe any medication at that time. Edens was dissatisfied with this response and sought an appointment with the other doctor on staff, Dr. Rahim, who gave him a prescription for Fioricet,[2] a drug that Edens states had been effective in the past.

The drug worked again, and it remained Edens' primary treatment until mid-autumn 1999, when Dr. Rahim stopped working at Pinckneyville. Dr. Larson again met with Edens on November 8, discontinued the use of Fioricet, and replaced it with a prescription for Tylenol. By December 7, according to Edens' medical records, the headaches had returned and were occurring up to five times a day. Edens claims that he asked Dr. Larson to put him back on the earlier drug, but was told that the only medicines that could be prescribed for him were Motrin, Tylenol, and aspirin. Edens alleges that this was a

---

2. It is unclear from the briefs and the record whether the prescription was for Fioricet or the related drug Fiorinal. Both medicines contain butalbital (a barbiturate) and caffeine. The only difference between the two is that Fioricet also contains acetaminophen, while Fiorinal contains aspirin. The difference is immaterial for our purposes.

cost-cutting measure imposed by Correctional Medical Services ("CMS"), the company responsible for providing health care at Pinckneyville, but Dr. Larson denies that there was any such restriction. He insists rather that he discontinued the Fioricet (which contains barbiturates) because of concerns about its potentially addictive quality.

Other doctors also refused Edens' request for Fioricet. Defendant Dr. Alfred Garcia, who replaced Dr. Larson at Pinckneyville in February 2000, instead tried Inderal (a beta blocker) and Dilantin (an antiepileptic drug), neither of which was effective, and allegedly told Edens that none of the drugs that had worked in the past (such as Fioricet, Midrin, Elavil, and Prednisone) was available. (Garcia was employed by Healthcare Professionals, Ltd. ("HPL"), another company that provided medical personnel at Pinckneyville.) Edens alleges that Dr. Garcia expressed surprise at the treatments he had received in the past, and that Garcia admitted to knowing "very little about headaches." Later, after he was transferred back to Logan, Edens was seen by defendant Dr. Donald Hinderliter (an employee of Wexford Health Sources), who, expressing concern about inmates faking illness to obtain drugs, refused to prescribe Fioricet until he had a chance to examine Edens during an attack.[3]

Edens filed grievances concerning his treatment at Pinckneyville and Logan, which were reviewed and denied by defendants Willard Elyea, Christine Mitchell, and Dave Huffman. Edens filed his complaint in the district court on August 11, 2000, and an amended complaint on January 17, 2002. He alleged that Drs. Larson, Garcia, and Hinderliter were deliberately indifferent to his medical condition; that Elyea, Mitchell, and Huffman showed indifference in their denial of his grievances; and that CMS, HPL, and Wexford contributed to his suffering through their alleged policies restricting the medication available to prisoners.

Apart from his own narrative, the primary support Edens offered for his claims was a collection of excerpts from medical textbooks and other sources of information about cluster headaches. Besides attesting to the severity of the condition, these were meant to show that the treatment Edens had been given was in clear conflict with accepted medical practice. For example, the Mayo Clinic Family Health Book declared that "[c]luster headaches are resistant to analgesic painkillers because these drugs take effect too slowly." Similarly, the Johns Hopkins Family Health Book explained that "[t]he short duration of cluster headaches rules out the use of conventional pain-relieving medications." Dr. Larson and CMS moved the district court to strike these materials, but the magistrate judge refused, concluding that they were potentially admissible at trial.

Nevertheless, the district court granted summary judgment in favor of the defendants, concluding that Edens' disagreement with the treatments he had received did not demonstrate that any of the defendant doctors had acted in anything but their best medical judgment. Given no deliberate indifference by the doctors, the court concluded that the administrators who reviewed Edens' grievances were likewise entitled to summary judgment. As for the defendant health-care companies, the court concluded that Edens had not

---

3. Edens has since been treated by another physician, Dr. Osafu, who after trying other medications eventually settled on Neurontin, which according to Edens has left him headache-free.

submitted reliable evidence of any policies restricting the medications inmates could receive.

A doctor's negligence in diagnosing or treating a medical condition does not by itself amount to deliberate indifference. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir.2001). But a plaintiff does not need to prove that harm was actually intended: "It is enough to show that the defendants actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir.2002) (citing *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Deliberate indifference can be shown even though a defendant physician has not entirely ignored the plaintiff's condition, if the prescribed treatment "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 262 (7th Cir.1996).

We have no doubt that the potential harm in this case is sufficiently serious. *See Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997) (a condition is objectively serious if failure to treat it could result in the unnecessary and wanton infliction of pain). It is uncontested that cluster headaches, if left untreated, are severely painful, even to the point of disability. *See Look v. Heckler,* 775 F.2d 192, 193 (7th Cir.1985). Edens' claim thus hinges on the defendants' state of mind—

whether the treatment given, to the extent that it was inadequate, was not merely negligent but rather so contrary to accepted standards as to imply deliberate indifference concerning the potential harm.

The district court concluded that Edens' evidence did not create a material question of fact on this point, reasoning that Edens' own inexpert views about appropriate treatment could not stand up against the doctors' informed medical judgment. But this misconstrues Edens' claim, which was not only that Drs. Larson, Garcia, and Hinderliter did not follow Edens' own preferred course of treatment, but that the course of treatment they did prescribe was manifestly inappropriate—such a "substantial departure from accepted professional judgment" that a jury could infer deliberate indifference to his serious medical condition.

■ Although the question is a close one, we conclude that Edens has met his burden with respect to the first defendant, Dr. Larson. Within a few days of Edens' transfer to Pinckneyville—shortly after his Elavil treatment was discontinued—Dr. Larson examined him and told him to try relaxation and meditation.[4] This may have been an appropriate response to Edens' speculation that the headaches were related to stress, but Larson has offered no explanation as to why it was appropriate to offer Edens no other form of treatment at that time. Similarly, Larson's decision several months later to discontinue Edens' use of Fioricet may have been legitimately motivated by a concern about its addictive properties, but he has not explained why Tylenol was a reasonable replacement. Edens has presented evidence (somewhat thin, but more than a scintilla) that con-

4. Dr. Larson states in his affidavit that "[t]he records do not indicate that any change was made in plaintiff's medication" at the intake interview. This appears somewhat disingenu-

ous—Edens' claim is that the Elavil was discontinued several days earlier upon his transfer to Pinckneyville.

ventional analgesics (like Tylenol) are commonly recognized as ineffective treatment for cluster headaches. In response, Larson offers only his self-serving affidavit that he "provided the plaintiff the treatment I felt was warranted and required by his condition." Although that may indeed be so, we believe that there is a sufficient basis for a jury to find otherwise.

We do not believe, however, that Edens has made a comparable showing with respect to the other two treating physicians, Dr. Garcia and Dr. Hinderliter. Although Garcia's prescription of Inderal and Dilantin was ineffective, and his alleged admission that he knew "very little about headaches" suggests a degree of negligence, they do not admit an inference of deliberate disregard of Edens' condition. Likewise, Hinderliter's refusal to dispense a medicine containing barbiturates until he could directly observe and evaluate Edens' headaches cannot be construed as so substantial a departure from reasonable and accepted practice as to imply deliberate indifference. With respect to these two, summary judgment was appropriate.

We also conclude that summary judgment was properly given in favor of Mitchell, Elyea, and Huffman, the administrators who denied Edens' grievances. Although one may disagree with their conclusion that the treatment Edens received was appropriate, there is no evidence that they were deliberately indifferent in reaching that conclusion. Summary judgment was also proper for the defendant healthcare companies. A private corporation can be held liable under § 1983 for its employees' unconstitutional actions only if the plaintiff can show that an official policy caused the violation. *See Woodward v.*

*Correctional Medical Services of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir.2004). Edens presented no non-hearsay evidence that any of the defendant companies had a policy of restricting inmates' access to medication, and so he cannot hold them liable for the doctors' actions.

We reverse the judgment of the district court with respect to Dr. Larson, affirm it in all other respects, and remand the case for further proceedings consistent with this order.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED