Payton RANDLE, Plaintiff–Appellant,

v.

Thomas WEBSTER, et al.,
Defendants–Appellees.

No. 04–2239.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 20, 2004.*

Decided Jan. 3, 2005.

Payton Randle, Pekin, IL, pro se.

K. Tate Chambers, Office of the United States Attorney, Peoria, IL, for Defendants–Appellees.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Federal inmate Payton Randle brought this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), claiming that staff members at FCI–Pekin were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The district court granted summary judgment for the defendants, and Randle appeals. We affirm the judgment.

Randle, who was wounded in separate shootings in 1992 and 1993, pleaded guilty in October 2000 to possession of crack with intent to distribute and was sentenced on January 4, 2001. In his verified complaint, Randle alleged that upon arriving at Pekin on January 31, 2001, he was seen by a member of the medical staff and complained to that individual that he was in pain from his trip to the facility. Two weeks later, Randle said, he appeared before a medical team and explained that he could not work because of his shooting

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

injuries, but nonetheless in early March he was assigned a cafeteria job. Randle protested to a member of the medical team that he should not be cleared for work without a physical, but he was told to start working anyway. According to Randle's complaint, on March 21, after a week or two on the job, he suffered back and leg spasms and fell, aggravating his gunshot wounds and also causing a new injury to his back. Randle sought medical attention and was taken to the prison infirmary early the next morning and given a physical, and that afternoon seen by a doctor who suspended his work assignment for four weeks. Randle tried to renew that exemption on April 23, but a physician's assistant instead authorized light duty. Three days later the doctor who saw him on March 22 conducted another examination and put Randle on a waiting list for x-rays. Those x-rays were taken in early June 2001 and, according to Randle, proved him disabled due to bullet fragments that had never been removed. Immediately afterward he was prescribed a walking cane.

The defendants moved for summary judgment. In their statement of undisputed facts, they explained that Randle received an intake screening with a medical staff member upon arriving at Pekin, and a physical examination when he saw the medical team in mid-February. Both times, according to the defendants, they noted Randle's old gunshot wounds but concluded after his physical that the preexisting injuries would not limit his fitness for regular work duty. The defendants disputed that Randle had complained of being in pain or unable to work before he started experiencing spasms on March 21. Upon the filing of the summary judgment motion, Randle received notice of Fed. R.Civ.P. 56 from both the defendants and the clerk of court, *see Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), but during the six months the motion was pending he responded only with a general opposition that does not address the defendants' statement of undisputed facts or challenge specific supporting exhibits. Nevertheless the district court evaluated, as part of the summary judgment evidence, Randle's complaint and 23 pages of prison medical records he earlier sought leave to append to the complaint.

We review de novo the grant of summary judgment. *Morfin v. City of E. Chicago,* 349 F.3d 989, 996 (7th Cir.2003). Randle claimed that in his early months at Pekin the defendants failed to provide him with adequate medical care and compounded the situation by forcing him to work. To prove an Eighth Amendment violation, an inmate must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir.2002). Deliberate indifference might be established by showing that the defendants knew of but consciously failed to treat an objectively serious medical condition, *see Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997), or that they forced the plaintiff to perform work knowing that the assigned tasks would significantly aggravate his condition, *Richardson v. Spurlock,* 260 F.3d 495, 499 (5th Cir.2001). But deliberate indifference cannot be shown merely by proving an incorrect diagnosis, *Steele v. Choi,* 82 F.3d 175, 178–79 (7th Cir.1996), or negligent treatment, *Walker,* 293 F.3d at 1037, or disagreement over the best course of treatment, *Gil v. Reed,* 381 F.3d 649, 663 (7th Cir.2004); *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996).

On appeal Randle argues that it was error to grant summary judgment, but on

441

this record we perceive no basis to upset the district court's decision. Much of Randle's appellate brief focuses on his disagreement with the defendants about whether or not he missed appointments with an orthopedic surgeon in July and August 2001, and on his contention that a review committee should have accepted the surgeon's January 2002 recommendation to remove bullet fragments from his hip. But these are matters beyond the scope of Randle's complaint, which claims deliberate indifference from the time of Randle's arrival at Pekin in January 2001 until he was prescribed a cane in June of that year. As to that six-month period, even accepting as true that from the beginning Randle told the medical staff he couldn't work because of his prior injuries, the record evidences nothing more than initial disagreement by the defendants with Randle's self-assessment that gunshot wounds he'd lived with for eight or nine years before arriving at Pekin made him unfit to perform any prison job. At summary judgment Randle did not dispute the defendants' evidence that his February 2001 appearance before the medical team included a physical examination, or that his work assignment was based on that examination. Moreover, once Randle began complaining of spasms, the defendants promptly provided medical care, including pain medication, and adjusted his work status by assigning light duty or exempting him altogether. Their response cannot be characterized as deliberate indifference.

Randle's remaining contentions merit little response. He faults the district court for not granting him leave to attach 23 pages of medical records to his complaint after it was served on the defendants, but the court told Randle that he could submit those same documents in response to a motion for summary judgment. Randle never did, but nonetheless the court, before granting summary judgment, reviewed the copies Randle had given the court earlier with his motion. Randle also contends that some medical records the defendants submitted with their motion for summary judgment are "fraudulent." "Inaccurate" is a better characterization of his allegation, but either way Randle needed to dispute the accuracy of the records with evidence in the district court, not with statements in his appellate brief. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir.2003). Neither of these arguments undermine the district court's order.

AFFIRMED.