NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 27, 2014[*]
Decided October 28, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 13-2859 | Appeal from the United States District Court for the Northern District of Illinois, Western Division. |
| MITCHELL THOMAS, *Plaintiff-Appellant*, | |
| *v.* | No. 11 C 50111 |
| JILL WAHL, et al., *Defendants-Appellees*. | Frederick J. Kapala, *Judge*. |

**O R D E R**

Mitchell Thomas, an Illinois inmate, appeals from the grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting that medical staff at Dixon Correctional Center acted with deliberate indifference in their postoperative care for his shoulder. We affirm the judgment.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

Thomas's suit stems from the pain-management decisions of three prison doctors—Jill Wahl, Bessie Dominguez, and Imhotep Carter—after successive surgeries on his right shoulder. Thomas had pinched his rotator cuff tendon during an altercation with another inmate in June 2007. In November 2009 the prison sent him to the University of Illinois Medical Center in Chicago where Dr. Benjamin Goldberg decompressed the tendon and removed unhealthy tissue. Upon Thomas's return to the prison, Dr. Wahl prescribed him Motrin, pain-relieving balm, a low bunk permit, and physical therapy. At a follow-up appointment several days later, Thomas was seen by Dr. Goldberg, who allegedly prescribed Vicodin (a narcotic) for Thomas's pain. (Dr. Dominguez, however, maintains that Dr. Goldberg prescribed only Motrin.) Dr. Dominguez later took over care for Thomas and prescribed Ultram (a narcotic-like opioid) and Naprosyn. Thomas complained of pain and asked for Vicodin, but Dr. Dominguez continued him on Ultram.

Dr. Goldberg performed a second surgery on Thomas in August 2010 to reconstruct his shoulder, which had been severely separated, and further repair his tendons. Dr. Goldberg prescribed Vicodin. After this surgery Dr. Carter oversaw Thomas's recovery and prescribed him several pain medications, including Ultram, Naprosyn, Nuerontin, and Motrin, in addition to pain-relieving balm. Thomas complained of pain and asked for the Vicodin prescribed by Dr. Goldberg, but Dr. Carter changed that prescription to the non-narcotic Ultram.

Besides being subjected to pain that went unrelieved, Thomas also complained of delays in his follow-up with Dr. Goldberg. After the second surgery, Dr. Goldberg had recommended that Thomas be seen again at the Medical Center in four weeks. Dr. Carter initially approved this follow-up but five months later decided to delay it pending the outcome of alternative methods of treatment, including physical therapy. During this delay, Thomas had insisted on returning to the Medical Center because he was in severe pain and a bone was protruding from his right shoulder. Dr. Carter stated in his affidavit that he would have considered rescheduling the follow-up, but Thomas was soon transferred to another prison.

Lastly, Thomas contested the prison's administrative handling of his postoperative grievances in which he complained of pain. In early February 2011, the Administrative Review Board denied his appeal seeking reconsideration of the denial of his grievances. In reaching this decision, the Board had contacted Amber Allen, the Health Care Unit Administrator, who reviewed Thomas's medical records and concluded that the care provided by his doctors had been appropriate.

In April 2011 Thomas sued Allen along with the three prison doctors, Wahl, Dominguez, and Carter. Thomas alleged that the doctors had been deliberately indifferent to his severe pain by withholding necessary pain medication. Specifically, Thomas asserted that Drs. Dominguez and Carter had changed Dr. Goldberg's Vicodin prescription to Ultram, despite knowing that Ultram did not alleviate his pain. Dr. Carter's decision to delay the follow-up with Dr. Goldberg also had to be deliberate indifference, Thomas added, because the bone protruding from his shoulder made the need for specialized medical attention obvious. And Allen acted with deliberate indifference, he maintained, because she reviewed his medical records and approved the adequacy of his care despite his grievances indicating otherwise.

The court granted summary judgment to all of the defendants. Concerning Dr. Wahl, the court concluded that she had no personal involvement in Thomas's suit because her last visit with him preceded the first act that he identifies as deliberately indifferent—Dr. Dominguez's decision to change Dr. Goldberg's initial Vicodin prescription to a nonnarcotic. As for Dr. Dominguez, the court concluded that Thomas had not provided evidence, other than his own affidavit, that the doctor had switched him from Vicodin to Ultram after the first surgery. And even if Thomas could have shown that he had been prescribed Vicodin and that Dr. Dominguez had later changed this prescription to Ultram, the claim would still fail because nothing in the record suggested that substituting a nonnarcotic for a narcotic was unjustified, given Thomas's history of polysubstance abuse. Regarding Dr. Carter, the court determined that Thomas's arguments failed for the same reasons they did against Dr. Dominguez: Dr. Carter's decision to switch Thomas to a nonnarcotic was not deliberate indifference given Thomas's history of polysubstance abuse, coupled with Dr. Carter's extensive array of treatment after the second surgery. Nor was Dr. Carter's decision to delay the follow-up deliberate indifference because even if his shoulder was damaged in places, Dr. Carter was not obligated to follow Dr. Goldberg's treatment plan: In the court's view, based on the "extensive treatment" that Thomas received from Dr. Carter and the other defendants, there was "no question" that the defendants took reasonable measures to treat the shoulder. Finally, regarding Allen, the court found that liability could not be pinned on her because she was merely an administrator without direct responsibility for patient care, and nothing in the record supported a finding that she was deliberately indifferent in reviewing Thomas's medical records and determining, based on that review, that Thomas had received adequate care.

On appeal Thomas first argues that the district court improperly granted summary judgment to Dr. Wahl because it overlooked his claim that she had prescribed

ineffective pain medication after the first surgery. But Thomas does not point to any evidence contradicting her affidavit that she approved Dr. Goldberg's recommendations for pain medicine, which he does not maintain were inadequate.

Thomas also disagrees with the court's conclusion that Dr. Dominguez did not act with deliberate indifference; he argues that the court overlooked his affidavit that Dr. Dominguez disregarded his complaints of severe pain by changing Dr. Goldberg's Vicodin prescription to a less efficacious nonnarcotic, Ultram. But this factual dispute is immaterial: Although withholding pain medications prescribed by specialists can amount to deliberate indifference, *see Gil v. Reed*, 381 F.3d 649, 662–64 (7th Cir. 2004); *Walker v. Benjamin*, 293 F.3d 1030, 1039–40 (7th Cir. 2002), the record reflects that Dr. Dominguez had a reasonable basis for switching the prescription to a nonnarcotic: Thomas's polysubstance-abuse history and the potential for misuse of controlled substances in prisons.

Thomas also challenges the court's conclusion that Dr. Carter did not act with deliberate indifference by changing the Vicodin prescription to Ultram. But as with Dr. Dominguez, Thomas's desire for narcotic pain medication does not create a triable fact issue because no reasonable jury could conclude that Dr. Carter's conservative treatment after the second surgery—including physical therapy, pain-relieving balm, low bunk permits, and four different pain medications—amounted to deliberate indifference. *See Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012); *Norfleet v. Webster*, 439 F.3d 392, 396–97 (7th Cir. 2006).

Thomas relatedly disputes the court's conclusion that Dr. Carter's decision not to schedule a follow-up with Dr. Goldberg after the second surgery was not deliberate indifference; in Thomas's view the visible deformity in his shoulder alone should have made the need for this visit obvious. These charges are disconcerting, and Dr. Carter's decision to postpone the follow-up visit to explore alternative treatment—treatment that he described as physical therapy with an exercise band—may seem under the circumstances to be nonresponsive or negligent. But "negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Lastly, Thomas challenges the district court's conclusion that Allen did not act with deliberate indifference by approving of, or failing to intervene in, the medical care for treatment of his shoulder. But as the court concluded, Thomas did not show that the treating doctors were deliberately indifferent, so he cannot show that Allen violated his Eighth Amendment rights by approving or failing to intervene in their care.

AFFIRMED.