NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 11, 2014*
Decided December 17, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 14-2189

| | |
|---|---|
| JEREMIAH D. LAMBERT, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 11-cv-418-bbc |
| | |
| KENNETH P. ADLER, | Barbara B. Crabb, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Jeremiah Lambert, a Wisconsin inmate, experienced permanent hearing loss in his right ear from otitis media, an inflammation of the middle ear. Lambert appeals from the adverse verdict on his Eighth Amendment claim that Dr. Kenneth Adler, the Associate Medical Director for the prison system's Bureau of Health Services, delayed sending him

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

to an ear, nose, and throat specialist for evaluation. *See* 42 U.S.C. § 1983. The district court found, after a bench trial, that Dr. Adler was not responsible, since he was just part of a committee which initially declined requests from Lambert's treating physician for evaluation by an ENT specialist. We affirm the judgment.

In December 2008, Lambert first experienced intermittent pain in his right ear, along with uncomfortable pressure, bleeding, and drainage. Nurses who saw him multiple times during the next six months irrigated wax from the ear and prescribed antibiotics. Then in July 2009, Lambert was seen briefly by Dr. Adler, who was helping out at Lambert's prison even though he does not treat inmates there on a regular basis. What happened at that meeting was disputed at trial.

In October 2009, prison physician Glen Heinzl examined Lambert, who reported a foul-smelling discharge from his ear and impaired hearing. Dr. Heinzl suspected that Lambert suffered from chronic serous otitis media, a condition that signals a perforated eardrum. He wanted to send Lambert to an ENT specialist and sought approval from one of two Prior Authorization Committees within the Bureau of Health Services. Dr. Adler chaired that committee, which a day later met and (after hearing from Dr. Heinzl by telephone) rejected the request, opting instead to switch antibiotics and monitor Lambert for two months.

That was on October 6, 2009. Two weeks later Lambert again saw Dr. Heinzl, still complaining of pain, drainage, and hearing loss. Dr. Heinzl continued the regimen of antibiotics and ordered an audiogram, which confirmed hearing loss in Lambert's right ear. After six more weeks Lambert's symptoms had not subsided, so on December 8 Dr. Heinzl presented a second request (again by telephone) for approval to send Lambert to an ENT specialist. The Prior Authorization Committee denied that request, but Dr. Heinzl was instructed to contact an ENT specialist for advice. He did that on January 21, 2010, and was told that the ENT specialist wanted to examine Lambert. The Prior Authorization Committee gave its approval on January 26.

About a month later Lambert was seen by the ENT specialist, who confirmed the diagnosis of otitis media and also verified that Lambert's eardrum was perforated. In August 2010, Lambert had surgery to remove damaged tissue from the middle ear and repair the eardrum. He later had a second surgery to reconstruct the bones of the middle ear, which had eroded from long-term inflammation. Lambert now wears a hearing aid and experiences ringing in his right ear without it.

The only witnesses at trial were Dr. Adler, Lambert, and Lambert's expert. Lambert pressed two theories of deliberate indifference. First he argued that Dr. Adler should have recognized the need for aggressive intervention when he substituted as a treating physician in July 2009. During that visit Dr. Adler admittedly saw a "small bloody bleb" on Lambert's eardrum and recognized signs of serous otitis media with effusion but prescribed only an over-the-counter decongestant. According to Lambert, the defendant accused him of trying to finagle a "field trip" when he insisted that a specialist be consulted. Dr. Adler denied this and testified that he reviewed Lambert's medical chart and, while examining his ear, did not detect any hearing loss or perforation of the eardrum. His treatment decision, Dr. Adler maintained, is supported by an online medical resource that, at trial, Lambert accepted as reliable. The district court disbelieved Lambert's testimony about the "field trip" remark and concluded that Dr. Adler had exercised medical judgment during this encounter, and that his actions could not be characterized as deliberately indifferent to Lambert's medical condition. Lambert does not contest this conclusion.

This appeal, then, concerns Lambert's second theory: that Dr. Adler was deliberately indifferent because the Prior Authorization Committee did not initially grant Dr. Heinzl's requests to involve an ENT specialist. Although he chairs that committee, Dr. Adler testified that he is just one of its dozen prison doctors and nurse practitioners who during weekly meetings engage in question-and-answer discussions with treating physicians before deciding whether to approve proposals for specialized, outside medical care. The committee, explained Dr. Adler, acts by consensus, and though as the chair he facilitates the discussion, he does not have veto power or authority to act unilaterally. And, he added, he was not the physician who first suggested during the October meeting the unanimous option of trying a different antibiotic. Lambert's expert, family practitioner Gregory Brotzman, opined that some or maybe even most doctors would have sent Lambert to an ENT specialist before the committee gave approval in January 2010, but he could not say if Lambert's hearing loss would have been less significant had the committee approved Dr. Heinzl's first request for outside assistance in October 2009.

In rejecting this theory, the district court found that the Prior Authorization Committee, not Dr. Adler alone, had decided against immediately sending Lambert to the ENT specialist. The court added that "the committee members acted independently and in reliance on their own professional judgment." Lambert had alleged that Dr. Adler unduly influenced the other members of the committee, some of whom he supervised, but at trial he never developed this speculative contention. And now on appeal, instead

of confronting the district court's analysis, Lambert ignores that he sued only Dr. Adler and implies that every member of the committee was deliberately indifferent. But Lambert called no one else from the committee to testify, and neither did he introduce other evidence contradicting Dr. Adler's testimony that Dr. Heinzl presented Lambert's medical history and that the committee members discussed Dr. Heinzl's request before the group unanimously declined his proposals to enlist an ENT specialist. Although Lambert disagrees with the process utilized by the committee, he cites no pertinent authority showing that the committee was not permitted to rely on Dr. Heinzl's representations about Lambert's medical condition without independently reviewing his medical record or consulting resource materials, and then exercise their own independent judgment in assessing the proper treatment. In any event, this process was not so obviously inappropriate as to suggest deliberate mistreatment. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Norfleet v. Webster*, 439 F.3d 392, 396–97 (7th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1014–15 (7th Cir. 2006); *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996); *Adams v. Poag*, 61 F.3d 1537, 1547 (11th Cir. 1995). Nor did Lambert contradict Dr. Adler's testimony that he does not steamroll committee decisions and that, in fact, another physician proposed switching antibiotics as the next step. And, as the district court recognized, since Dr. Adler did not control the actions of the committee, he was not personally responsible for its initial decisions—right or wrong—to delay involving an ENT specialist. *See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002).

Finally, we add one observation of our own. Even if Lambert had shown that Dr. Adler was both wholly responsible for refusing quicker access to an ENT specialist and that he acted with a culpable state of mind, Lambert still lacked medical evidence establishing that the delay from early October to the time he saw the specialist in February contributed to his injuries. Indeed, his own expert was unable to draw that conclusion. *See id.*; *Langston v. Peters*, 100 F.3d 1235, 1240–41 (7th Cir. 1996). Although Lambert's condition worsened after his first report of ear pain in December 2008, no witness suggested that seeing the ENT specialist in October 2009 instead of January 2010 would have prevented or mitigated Lambert's hearing loss.

AFFIRMED.