Felix DELGADO–BRUNET,
Plaintiff–Appellant,

v.

John L. CLARK, Warden, USP–Marion, Wayne D. Hilliard, Roger Baxter, and Roland Beckman, Defendants–Appellees.

No. 95–2243.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 29, 1995.

Decided Aug. 15, 1996.

---

John Dale Stobbs, II, East Alton, IL, (argued), for Plaintiff–Appellant.

Laura J. Jones, Office of the United States Attorney, Criminal Division, Fairview Heights, IL (argued), for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Felix Delgado–Brunet, an inmate at the United States Penitentiary in Marion, Illinois, brought this action under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and 28 U.S.C. § 1331, claiming that four prison officials violated his Eighth Amendment rights. On March 31, 1995, the district court entered judgment in favor of all defendants. We affirm.

I

Delgado–Brunet was housed in the control unit (or H–Unit) at USP–Marion. Inmates in the control unit are locked in their cells, except for an inmate orderly who is allowed to approach other inmates. The control unit, the most secure part of the prison, is reserved for prisoners who are unable to function in a less restrictive environment. Delgado–Brunet was there because he had a

history of violent behavior. He was classified as a "CIM separation case," meaning that the prison officials had determined that he needed to be separated from certain other individuals. The record does not reflect who those persons were, but the magistrate judge speculated that one person might have been Randy Gometz, an inmate with ties to the Aryan Brotherhood gang. The CIM order did not indicate that Delgado–Brunet (a Cuban–American) needed to be separated from everyone associated with the Aryan Brotherhood or any other particular gang.

Defendant Wayne Hilliard was the manager of the control unit at all times pertinent to this case. In Hilliard's opinion, Delgado–Brunet was a person who needed to be moved frequently. Accordingly, in late September 1989, he moved Delgado–Brunet from the B-range to the C-range in the control unit and placed him in a cell at the end of the unit, with no inmates on either side. Inmate Theodore Patterson was housed in a cell across from Delgado–Brunet. Patterson worked as an orderly for C-range and thus was released from his cell from time to time to perform his duties. On October 6, 1989, Patterson was out of his cell. (The government asserts that the true date was October 5, 1989, but the one-day difference is immaterial to the issues before us.) Rather than sweeping or mopping, he approached Delgado–Brunet and threw a "zip gun" explosive device in Delgado–Brunet's face. Immediately afterward, control unit staff locked Patterson up and took Delgado–Brunet to an outside hospital. Delgado–Brunet suffered serious injuries from the attack, including the complete loss of vision in one eye and a forty-five percent loss of vision in the other eye.

## II

On May 21, 1991, Delgado–Brunet filed his initial pro se complaint, naming as defendants John L. Clark, the warden of USP–Marion, Wayne Hilliard, and unknown members of the H–Unit staff. On February 28, 1992, the district court issued an order finding the action frivolous, denying leave to proceed *in forma pauperis*, and dismissing the action. Delgado–Brunet responded on March 19, 1992, with a "motion for reconsideration," which the district court construed as a motion under Rule 60(b). In an order dated March 30, the district court stated that it would consider the request to reopen the case after it reviewed the proposed amended complaint, and it gave Delgado–Brunet 21 days in which to file the amended complaint. Instead of filing, he asked for permission to dismiss his case without prejudice. The court denied that motion in an order of April 20, 1992, but gave Delgado–Brunet another 75 days in which to file the proposed amended complaint.

On June 26, 1992, Delgado–Brunet finally submitted his first amended complaint, which the district court ordered the clerk to file on July 2, 1992. The amended complaint again named Warden Clark and Hilliard, and it named for the first time Officers Roger Baxter and Roland Beckman as defendants. (It also named "three unknown unit officers," but Delgado–Brunet does not pursue this part of the suit on appeal, and thus neither do we.) Count I alleged that Hilliard, Clark, and Baxter were aware of Delgado–Brunet's problems with the Aryan Brotherhood gang and his need for protection from its members. It claimed that the defendants knew that Delgado–Brunet could not safely be housed on C-range but that they placed him there anyway, with deliberate indifference to his safety. Count II alleged that Officer Beckman and the three unknown officers were also responsible for the assault, because they failed to search and to supervise Patterson when he was released from his cell on the day in question. He claimed this was a willful violation of standard operating procedures and that the defendants acted with deliberate indifference to his safety. On both counts, Delgado–Brunet sued defendants in their official and individual capacities and asked for compensatory and punitive damages.

The disposition of the case varied by the defendant, although the bottom line was the rejection of Delgado–Brunet's suit. Clark moved for summary judgment on the ground that he did not become the warden at USP–Marion until months after the incident in question. The district court granted Clark's motion on July 26, 1993, and Delgado–Brunet

does not contest that ruling here. Baxter and Beckman moved to dismiss on statute of limitations grounds, arguing that they were first sued in the amended complaint, which was filed more than two years after the incident in question. Again, the district court agreed and on July 26, 1993, granted their motion to dismiss. Finally, Hilliard moved for summary judgment on grounds of qualified immunity and the lack of any facts tending to show deliberate indifference for purposes of the Eighth Amendment. The court concluded that the key facts were not in dispute, and it granted summary judgment for Hilliard. It entered its final judgment on March 31, 1995 (including the dismissal of the action against the "three unknown unit officers"), and this appeal followed.

### III

Two questions remain before us, after all the proceedings below: was the district court correct in dismissing the claims against Baxter and Beckman as time-barred, and was Hilliard entitled to summary judgment? The first of these requires us to consider the length of time Delgado–Brunet had to sue the two officers, in light of the governing Illinois statute of limitations and the effect of Fed.R.Civ.P. 15(c) on his claims. The second requires consideration of the standards for Eighth Amendment claims and for assertions of qualified immunity. Our review of both questions is *de novo. Farmer v. Brennan,* 81 F.3d 1444, 1449 (7th Cir.1996) (summary judgment); *Woods v. Indiana Univ.-Purdue,* 996 F.2d 880, 884 (7th Cir. 1993) (statute of limitations based upon interpretation of Rule 15(c)).

#### A. *Baxter and Beckman*

*Bivens* actions, like actions under § 1983, are considered as personal injury claims and are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *Lewellen v. Morley,* 875 F.2d 118, 120 (7th Cir.1989); see also *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 2000–01, 104 L.Ed.2d 582 (1989); *Wilson v. Garcia,* 471 U.S. 261, 279, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985). In Illinois,

this kind of personal injury case is governed by a two-year statute of limitations. 735 ILCS 5/13–202. See *Crowder v. True,* 74 F.3d 812, 814 (7th Cir.1995); *Dixon v. Chrans,* 986 F.2d 201, 203 (7th Cir.1993). Since the event in question occurred on October 6, 1989, and Baxter and Beckman did not make an appearance in the suit until June 26, 1992, at the earliest, Delgado–Brunet's claims against them are time-barred unless saved by some exception to the rule.

One possibility is the effect of the change in Illinois's rules for prisoner litigation that occurred in 1991. Prior to January 1, 1991, Illinois treated imprisonment as a condition that tolled the statute of limitations during an inmate's incarceration. Effective that date, the Illinois Code of Civil Procedure para. 13–211 was amended to repeal that tolling rule. This Court considered the effect of that amendment in *Wilson v. Giesen,* 956 F.2d 738 (7th Cir.1991). It rejected the argument that the amendment eliminated a legal disability, which would have given persons formerly under the disability a full two years after the effective date of amendment to bring suit. Instead, it concluded that the amendment merely shortened the statute of limitations for the group in question (prisoners). In these cases, Illinois normally applies the amendment retroactively "if the plaintiff has a reasonable time between the effective date of the amendment and the date when his claim would be barred under the amendment in which to file his claim." *Wilson,* 956 F.2d at 741–42. In *Wilson,* this Court concluded that a delay in filing suit of twenty-three months was unreasonable and thus the prisoner's claim was time-barred.

Here, we have a closer case. The two-year period allowed under Illinois law expired on October 6, 1991, slightly more than nine months after the effective date of the amendment to the Illinois statute. The district court found that this was a reasonable time period, particularly because Delgado–Brunet was sufficiently aware of the basis for his claims to name Clark, Hilliard, and the unknown members of the H–Unit staff in the May 21, 1991, complaint. Delgado–Brunet responds that his delay was excusable because he was a *pro se* litigant, and because

he allegedly made a request for the names on March 29, 1991, which the warden ignored. He also noted in paragraph G of his original complaint that he

> attempted to learn the names of the officers and staff members working in H–Unit on the date/time of his injury by requesting Warden Clark identify them for the purpose of Court action. Warden Clark refused to identify the officers involved. A copy of plaintiff's request to Warden Clark is attached hereto. Plaintiff personally handed this request to Warden Clark and asked for his assistance, but none was forthcoming.

There is no evidence, however, that Warden Clark ever received the alleged March 29th request for names, because there is no file stamp on it, no record of it appears in any of the prison records, and the original (which should have gone to the Warden in the ordinary course) rather than the prisoner copy of the request was attached to the May 21st complaint. Delgado–Brunet does not argue before this Court that the doctrine of equitable tolling, under which a plaintiff is given more time to sue because, despite all due diligence, he cannot obtain vital information about the suit, saves his claim. See *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 852 (7th Cir.1996). In any event, it appears that the district court could have concluded from the questionable circumstances of the alleged March 29th request that Delgado–Brunet had not shown the due diligence required for equitable tolling, and we would be hard pressed to characterize such a conclusion as an abuse of discretion.

■ Lack of cooperation with efforts to learn names is not the kind of problem that indicates whether or not a particular time period is reasonable for purposes of applying the new statute of limitations in any event. An obstreperous defendant might refuse to cooperate for two years, yet no one could argue that two years was an unreasonable period of time. If the defendants had deliberately frustrated Delgado–Brunet's efforts to pursue his suit, he might have made an argument for equitable estoppel. See *Wolin*, 83 F.3d at 852; *Chakonas v. City of Chicago*, 42 F.3d 1132, 1136 (7th Cir.1994). However, he did not. Thus, we conclude that nothing in the amendment to the Illinois statute of limitations extended the time for suing Baxter and Beckman beyond the October 6, 1991, date.

■ This leaves only one possibility: Delgado–Brunet's argument that the June 26 (or July 2) amended complaint related back to the filing date of the original complaint. Delgado–Brunet asserts that the mere fact that the district court accepted the amended complaint for purposes of Rule 15(a) means that Rule 15(c) automatically provided for the relation back of the entire amended complaint, including its claims against new named parties. This argument misunderstands the relationship between the two subsections of the rule. Many amended complaints permitted under Rule 15(a) change or add theories of the case that might otherwise cause statute of limitations problems if they did not relate back to the original filing. The first two subsections of Rule 15(c) solve that problem, consistently with the purposes behind statutes of limitations, by allowing relation back whenever (1) the law that provides the statute of limitations would permit it and (2) whenever the new claim or defense arises out of the same transactions or occurrences that were the subject of the original pleading (as to which the adverse party is already on notice that litigation is pending).

■ Rule 15(c)(3) applies to amendments like Delgado–Brunet's, which change the parties who are being sued. In these cases, Rule 15(c)(3) now provides that an amendment changing a party or the naming of a party relates back to the original filing date only if it arises out of the conduct, transaction, or occurrence described in the original pleading and if, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by the amendment:

> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c) was amended effective December 1, 1991, after the original complaint in this case but before the amended complaint. The effect of the amendment was to overturn the Supreme Court's ruling in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986), which required the defendant to receive notice within the period of limitations rather than within the time for service of process. The Supreme Court in its order adopting the 1991 amendments stated that the rule changes govern "insofar as just and practicable, all proceedings in civil actions then pending." Order Adopting Amendments to Federal Rules of Civil Procedure, 500 U.S. 965 (April 30, 1991). Accordingly, this Court applies the Rule 15(c) amendments to cases, like *Delgado–Brunet's*, which were pending at the time of the amendments' enactment, *Woods v. Indiana Univ.-Purdue*, 996 F.2d 880, 886 (7th Cir.1993), though for Delgado–Brunet the 120 days provided by Rule 4(m) make no difference to the outcome.

In considering the Rule 15(c) issue, we do not write on a clean slate. This Court decided years ago that the substitution of named individuals for "John Doe" defendants constitutes a "change of parties" within Rule 15(c) and thus that the requirements of 15(c) must be met in circumstances like the ones we face here. See *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978). In *Sassi*, this Court upheld a district court's dismissal of an amended complaint against named members of the Milwaukee Police Department, on the ground that they had no notice within the limitations period that they would have been named as original defendants. *Wood v. Worachek*, 618 F.2d 1225 (7th Cir.1980), was similar: again unnamed officers of the Milwaukee Police Department had been designated in the original complaint (a suit for various civil rights violations) and only later, after the limitations period had expired, did the plaintiff amend the complaint to specify the particular individuals being sued. This Court upheld the district court's dismissal of the amended complaint against the new defendants, holding that "Rule 15(c) permits an amendment to relate back only where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Wood*, 618 F.2d at 1230. See also *Worthington v. Wilson*, 8 F.3d 1253, 1256–57 (7th Cir.1993).

Mistakes in naming parties are far less likely to have drastic consequences in official rather than individual capacity actions, because Rule 15(c) specifically provides that the delivery or mailing of process to the U.S. Attorney, her designee, the Attorney General, or an agency or officer who would have been proper if named satisfies the requirements of Rule 15(c)(3)(A) and (B) with respect to the United States or any agency or officer thereof. However, in the related context of a § 1983 case, this Court held that the putative defendants' knowledge of the § 1983 action against them in their personal capacities could not be inferred from service on the Attorney General in an original habeas corpus proceeding. *Moore v. Indiana*, 999 F.2d 1125, 1130–31 (7th Cir.1993). This was true not only because the actions were different, but also because there was nothing in the notice to the Attorney General to indicate that particular private individuals were going to be sued in their individual capacity.

The same is true in this case. Nothing whatever suggests that Baxter and Beckman should have known that they were going to be sued in their individual capacities prior to the time Delgado–Brunet's amended complaint was submitted to the district court. In fact, as the government points out, this is not even a case where the warden's receipt of the first complaint might somehow have put other prison officials on constructive notice of the suit. The district court concluded that the first complaint was frivolous, and it dismissed the complaint. The prison officials never received anything until the court permitted the filing of the "amended" complaint on July 2, 1992. Because Baxter and Beckman had no notice of the institution of the first action, the amended complaint cannot relate back to the May 21, 1991 complaint. The district court therefore properly dismissed the case against them as time-barred.

## B. *Hilliard*

The district court ruled both that Hilliard enjoyed a qualified immunity from

suit and that there was no genuine issue of fact with respect to the underlying Eighth Amendment claim. Under these circumstances, however, the two inquiries effectively collapse into one. As the district court noted, even in 1989 a plaintiff claiming an Eighth Amendment violation had to show the defendant's actual knowledge of the threat to the plaintiff's safety, failure to take reasonable measures, and subjective intent to harm or deliberate indifference. *Goka v. Bobbitt,* 862 F.2d 646, 651 (7th Cir.1988). If there were genuine issues of fact concerning those three elements, then Hilliard could not have avoided trial on qualified immunity grounds, because no one in 1989 could reasonably have believed that he could have deliberately ignored a known threat or danger. If the uncontested facts revealed a fatal gap in the plaintiff's case, then the defendant would win on the merits.

■ Even though Eighth Amendment law has changed somewhat since 1989, principally as a result of the Supreme Court's clarification of the "deliberate indifference" standard in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the changes did not substantially alter this Court's standards. *Haley v. Gross,* 86 F.3d 630, 641 (7th Cir.1996). As the Supreme Court noted in *Farmer,* the Eighth Amendment imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1976 (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984)). Nevertheless, before the official can be liable he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1979.

Delgado–Brunet's pleadings and deposition, read in the light most favorable to him, fall short of linking his fears of gang related violence to Hilliard's knowledge. Granted, he showed that he feared gang violence, in particular violence from the Aryan Brotherhood. But Delgado–Brunet's complaint contains only the vague statement that Patterson was a "known gang member" without elaborating on who had this knowledge. The fact that Delgado–Brunet himself may have known Patterson to be a member of the Aryan Brotherhood and that he believed Patterson had previously injured another Cuban does not establish that Hilliard shared this knowledge.

The record shows only that Hilliard, as the Control Officer, knew that Delgado–Brunet needed to be separated from "certain other inmates," and that he took steps to do this. Delgado–Brunet was in a cell at the end of the range, with no immediate neighbors. Patterson had been in the cell across from Delgado–Brunet for several weeks without incident, and there was nothing to indicate that Hilliard should have anticipated problems either between Patterson and Delgado–Brunet or between Patterson and any other inmate. Prior to the attack, Delgado–Brunet requested a transfer from C-range and told Hilliard that he knew "something was coming down" and that he believed the Aryan Brotherhood was planning on attacking someone. Delgado–Brunet, however, concedes that he did not tell Hilliard that he believed he would be the target of an attack by the Aryan Brotherhood or Patterson, and he offers nothing else to suggest that Hilliard was aware of the risk. The first part of the *Farmer* test for an Eighth Amendment violation—the defendant's knowledge of a substantial risk of serious harm—is therefore missing.

Accordingly, we AFFIRM the judgment of the district court granting summary judgment for Hilliard and dismissing the claims against the other parties.