In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3064

RANDY P. O'BRIEN,

*Plaintiff-Appellant,*

*v.*

INDIANA DEPARTMENT OF CORRECTION, by and through its commissioner EVELYN RIDLEY TURNER, and CRAIG A. HANKS, Superintendent, in his individual capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 C 18—**David F. Hamilton**, *Judge.*

ARGUED APRIL 4, 2007—DECIDED JULY 26, 2007

Before KANNE, WILLIAMS, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Randy O'Brien has been a prisoner in Indiana since 1996, having been convicted of rape, sexual battery, and burglary. In 2001, he was attacked and beaten by two other inmates. In 2003, he brought suit under 42 U.S.C. § 1983, alleging that the warden was deliberately indifferent to his safety in violation of the Eighth Amendment. In 2005, he sought to add additional defendants to his suit. That motion was

denied. The district court entered summary judgment in favor of the defendants. He appeals the denial of the motion to add parties and the entry of summary judgment. For the reasons set forth below, we affirm.

## I. HISTORY

Before his conviction, O'Brien was a corrections officer at the Indiana Youth Center. Almost immediately upon his arrival at the Wabash Valley Correctional Facility in 1996 he was recognized by other inmates as being a former guard. Realizing that his former life was likely to make him a tempting target for other inmates, he requested that the prison take him into protective custody. He was removed from the general prison population and placed into the facility's "D Segregation" unit while the prison considered his request. About three weeks later, and based on an evaluation by a case worker, O'Brien was moved into the left wing of the "D Housing Unit." Although not segregated from the entire prison population, the prison tended to place "at-risk" prisoners such as O'Brien in the left wing of the D Housing Unit. The left wing also included some members of the general prison population— that is, non "at-risk" prisoners. O'Brien did not renew or repeat his request for a more segregated arrangement.

Four and one-half years passed. On January 14, 2001, two other inmates in the D Housing Unit attacked O'Brien and, among his other injuries, he lost his left eye. O'Brien hired Indianapolis attorney C. Bruce Davidson, Jr. In January 2003, seven days before the statute of limitations would have run, he filed a complaint alleging that the Indiana Department of Correction and the warden of Wabash Valley Correctional Facility had violated O'Brien's right under the Eighth Amendment to be free from cruel and unusual punishment. *See* U.S. CONST. amend VIII.

The district court directed O'Brien to support the legal sufficiency of his complaint. On April 8, 2003, attorney Davidson filed a motion seeking an extra two days to respond to the court's order. For the purposes of this case Davidson was never heard from again. The court granted the two-day extension, and then granted three additional extensions *sua sponte*, apparently in the hopes that Davidson would reply. Having heard nothing from Davidson, the district court eventually dismissed the complaint with prejudice.

In November 2003, another Indianapolis attorney, who happened to also be Davidson's landlord, noticed that Davidson was not diligently contacting his clients and was not paying his rent in a timely manner. He left a note for Davidson to contact him. Davidson did not immediately reply. We now know that Davidson was busy robbing a bank in Cincinnati that November—the first of roughly twenty-five bank robberies that attorney Davidson would commit over the next two years.

By January 2004, it became clear that Davidson had abandoned his practice of law. An attorney was appointed by the Indiana Supreme Court as a Reviewing Master and took possession of Davidson's files. That attorney noticed that O'Brien's case had been dismissed, and he contacted O'Brien's mother, who then notified O'Brien. In March 2004, O'Brien, through new counsel, moved the district court for relief from judgment due to his previous attorney's abandonment of his practice. *See* FED. R. CIV. P. 60. The court granted the motion, and O'Brien filed an amended complaint in June 2004.

In February 2005, O'Brien filed a motion to add new parties to the complaint. The defendants opposed the motion, and the district court denied the motion. In June 2006, the district court entered summary judgment in favor of the defendants. O'Brien now appeals the denial of

his motion to add new defendants and the entry of summary judgment in favor of the defendants.

## II. ANALYSIS

### A. *The Motion to Add Parties*

Rule 15(a) requires that leave to amend a pleading "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). But there is a catch: O'Brien sought to add parties to the complaint more than two years after the statute of limitations had run against those persons. O'Brien must also satisfy Rule 15(c), which allows the amended pleading to relate back to the date of the original pleading under certain limited conditions. The district court's decision to deny a motion to amend a pleading is reviewed for abuse of discretion. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

The text of Rule 15(c) requires that the newly added parties must have had notice of the action within the time period for service of process, they must have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against" them, and the amended pleading must concern the same conduct, transaction, or occurrence. FED. R. CIV. P. 15(c)(2)-(3). O'Brien's Motion to Add Parties addressed the question of whether the alleged conduct arose out of the same transaction or occurrence. R. 49 ¶ 23. But it did not address the question of whether the new parties were on notice of the original suit or had knowledge that they were the rightful defendants. Instead, O'Brien's argument relied heavily on the admittedly unseemly level of neglect demonstrated by his first attorney. The defendants did devote some portion of their pleading to the question of whether an error on the part of the plaintiff should allow an unsuspecting defendant to be added long after the statute of limitations had passed. R. 50 ¶ 8.

In *Delgado-Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir. 1996), we addressed the question of whether a prisoner's civil suit may be amended after the statute of limitations had run in order to name new individual defendants who were not on notice of the original complaint. Although *Delgado-Brunet* was a *Bivens* action, the opinion made clear that the analysis was applicable to claims arising under § 1983 as well. *Id*. Rule 15(c) and *Delgado-Brunet* clearly instructed the district court that the amended complaint should not have related back. The appellant repeats here many of the same arguments that he made below, focusing on the neglect of O'Brien's original attorney. But the question for us is not whether we would make the same decision that the district court did. We must be convinced that the decision by the district court was fundamentally wrong. *Chavez v. Ill. State Police*, 251 F.3d 612, 628 (7th Cir. 2001).

We see no reason why the order denying the motion was an abuse of discretion. We are not faced with the question of whether it would have been an abuse of discretion if the district court *had* allowed new parties to be named at the time that the suit was revived in the spring of 2004. We are well aware of the unusual level of professional incompetence demonstrated by Davidson in his handling of this case in 2003. Whether it would have been within the range of the district court's discretion to allow those new parties to be added once O'Brien's case was being handled by more diligent lawyers is a question for another case. We hold simply that in this case, where O'Brien escaped the results of his lawyer's incompetence via a Rule 60 motion in June 2004 and was given a second bite at the apple, the district court did not abuse its discretion in denying him a third bite at the apple after an additional nine months had passed.

*B. Summary Judgment*

O'Brien does not address the district court's dismissal of his claim for injunctive relief from the Department of Correction. We turn, then, to the claims against the named defendant, Craig Hanks. The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. CONST. amend VIII. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Liability exists "only if [the defendant] knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

The parties here seem to agree that the first requirement, that Hanks had a subjective knowledge that O'Brien faced a substantial risk of serious harm, is met. The only question on appeal is whether he failed to take reasonable measures to abate the harm. Because the case comes to us after entry of summary judgment in favor of the defendant, we review the judgment *de novo* and view all facts and draw all inferences in the light most favorable to the plaintiff. *Vining-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

Hanks argues that the pleadings and evidence do not show any genuine issue of material fact, and that his actions do not rise to the level of deliberate indifference as a matter of law. We agree. *Farmer* does not require that the harm ultimately be averted, as long as the defendant reasonably responded to whatever known risks there were.

511 U.S. at 847. This makes sense: the question of whether a defendant was deliberately indifferent must logically depend on what information was available to the defendant at the time that a decision was made. Based on the evidence in the record, we know that almost immediately upon entering Wabash Valley, O'Brien was taken into segregation so that the danger to him could be evaluated. We also know that the case worker considered whether there were specific threats directed against O'Brien, or whether this was a generalized danger that his former life would pose to him. Finding nothing to suggest that O'Brien was in any more danger than other former police and corrections officers, the prison placed him where other at-risk inmates were placed. The evidence indicates that this course of action had been followed repeatedly in the past, and there is nothing in the record to show that the prison should have had any reason to think it would not be successful in this case.

O'Brien makes a colorful argument, analogizing the prison's course of action to jumping out of a plane without a parachute and being lucky enough to survive the fall. The argument proceeds that O'Brien's survival for four and one-half years by luck or by skill should not be used to justify the prison's decision to throw him out the door of the plane in the first place. But we think that he misses the point here: O'Brien was not the first former officer placed in D Housing. The prison had been placing people like him in exactly these circumstances long before he arrived on the scene and there is nothing in the record to indicate that any member of the prison staff had a reason to think it would not continue to provide relative safety for those inmates. By the time O'Brien came along, "jumping out of planes without a parachute" had become common practice and he, as the plaintiff, provides no evidence that anybody had ever been harmed by it.

O'Brien argues that the question of whether the warden took reasonable steps is a genuine issue of material fact

that ought to at least be presented to a jury. Our circuit precedent is to the contrary. *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997). In *Lewis*, a prisoner came to believe, after being assaulted by members of a prison gang, that he was likely being targeted for further assaults by the same gang. *Id.* at 551-52. He requested protective custody and was granted it for a period of time, but he was later transferred back into the general prison population, where he was assaulted again. *Id*. We affirmed entry of summary judgment in favor of the prison staff, noting that if "the defendants in this case simply refused to do anything, [the] case might survive summary judgment." *Id.* at 553. Having transferred the prisoner to a different portion of the prison, thus denying him protective custody, the "subsequent events proved at best that the defendants exercised poor judgment in simply choosing to send Lewis to a different dormitory. Exercising poor judgment, however, falls short of meeting the standard of consciously disregarding a known risk to his safety." *Id*. at 554 (citing *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991)).

The facts here are remarkably similar. Faced with O'Brien's status as a former prison guard, the staff at Wabash Valley initially brought him into segregation for his safety. Having considered the nature of the threat against him and the availability of placing O'Brien among the at-risk population in D Housing, the prison chose to place him with the other former police officers, guards, and prosecutors in D Housing. As in *Lewis*, this decision does not amount to an unreasonable response to a known risk.

### III. CONCLUSION

For the forgoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*